IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Donald Colby Hoskinson,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21cv1320 (AJT/IDD) |
| | ) | |
| **Edward Boakya** | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Virginia inmate Donald Colby Hoskinson ("Hoskinson" or "Plaintiff") initiated this civil action pursuant to 42 U.S.C. § 1983, alleging Defendant Dr. Boayke violated his constitutional rights while he was detained at a Virginia Department of Corrections ("VDOC") facility, the Nottoway Correctional Center ("NCC"). Specifically, Plaintiff alleges the defendant provided him inadequate medical care by performing a digital rectal exam that he alleges was performed without his consent. [Dkt. No. 18 at 1]. Defendant has filed a motion for summary judgment, with a supporting brief, affidavit and exhibit. [Dkt. Nos. 36, 43]. Plaintiff received the notice required by Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 38]. Plaintiff has responded. [Dkt. No. 44]. Accordingly, the pending motion is ripe for disposition. For the reasons that follow, defendant's motion for summary judgment must be granted, and the civil action will be dismissed.

**I. Undisputed Facts**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendant, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, set forth a statement of material facts that defendant contends is undisputed. Plaintiff has not complied with

his obligations under those Rules by submitting statements of undisputed and disputed facts. Accordingly, Plaintiff has failed to rebut any of the facts set forth in defendant's motion for summary judgment, *Gholson v. Murray*, 953 F. Supp. 709, 714 (E.D. Va. 1997), and the Court accepts defendant's statement of facts as true. *See Integrated Direct Mktg., LLC v. May*, 129 F. Supp. 3d 336, 345 (E.D. Va. 2015) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine facts in opposition to the motion.") (quoting E.D. Va. Loc. Civ. R. 56(B)), *aff'd*, 690 F. App'x 822 (4th Cir. 2017); *see also JDS Uniphase Corp. v. Jennings*, 473 F. Supp. 2d 705, 707 (E.D. Va. 2007) (movant's statement of undisputed facts is deemed admitted where nonmovant's response fails to "identify with any specificity which facts, if any, were disputed") (citing E.D. Va. Loc. Civ. R. 56(B)).[1]

Accordingly, the following statement of uncontested facts is derived from a review of defendant's statement of undisputed facts, and the record.

1. At all relevant times, Plaintiff was incarcerated at the NCC. [Dkt. No. 18].

2. At all relevant times, Dr. Boakye was a contract physician for the VDOC at NCC. [Dkt. No. 43-1].

---

[1] The record of admissible evidence includes defendant's affidavits and exhibits. [Dkt. Nos. 43, 43-1, 43-2]. The Plaintiff's amended complaint is not sworn to. *See Goodman v. Diggs*, 986 F.3d 493, 498-99 (4th Cir. 2021) (verified pleadings are the "equivalent of an affidavit"). While the Plaintiff only swore to the service portion of his amended complaint, and not to the allegations in the complaint itself [Dkt. No. 18 at 15-16], the relevant facts are not in dispute. Plaintiff submitted unauthenticated exhibits, which include copies of his medical records from NCC, and a long-unsworn narrative. [Dkt. No. 44-2].

Plaintiff also seeks appointment of counsel, which will be denied. "A *pro se* prisoner does not have a general right to counsel in a § 1983 action." *Evans v. Kuplinski*, 713 F. App'x. 167, 170 (4th Cir. 2017) (citing *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984)). Further, this Court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and, to qualify, an indigent claimant must present "exceptional circumstances." *See id*. Exceptional circumstances exist where a "*pro se* litigant has a colorable claim but lacks the capacity to present it." *See Whisenant*, 739 F.2d at 163. Here, Plaintiff does not have a colorable claim.

2

3. On April 3, 2019, Plaintiff presented to Dr. Boakye complaining of "sudden low back pain while making his bed [approximately] 2 days ago." [Dkt. No. 43-2]. Dr. Boakye noted that Plaintiff "claims difficulty weight bearing" and that he was brought in[to medical] in a wheelchair." [*Id.*]. Plaintiff complained of "back pain going into both legs," and denied "any fecal/urinary incontinence." [*Id.*].

4. Dr. Boayke "managed to get him onto the examination couch." During Dr. Boayke's examination, Plaintiff claimed back pain with dorsiflexion of his feet and extension at his knees against resistance. The examination indicated that Plaintiff's knee and ankle reflexes were preserved. [Dkt. No. 43-2].

5. In standard medical practice, if a straight leg raising test (SLR) reflects radicular pain that radiates below the knee on the affected side or bilaterally, a sensory assessment of the buttock, perineum, and extremities, using touch or a pinprick, is performed to assist the physician in determining the need for an orthopedic or neurosurgical consultation. [Dkt. No. 43-1; 43-2].[2]

6. An important component of a sensory assessment is the search for signs compatible with a cauda equina syndrome. Cauda equina syndrome, often caused by a disc herniation in the lumbar spine (lower back), is the compression of a collection of nerve roots called the cauda

---

[2] Such sensory assessments are commonly determined by use of a digital rectal exam. *See* Cauda Equina Syndrome, (https://my.clevelandclinic.org/) (last viewed Apr. 27, 2023). Because this is the only sensory assessment mentioned in the record, the Court will assume this is the sensory assessment employed during the April 3, 2021 examination. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (collecting cases); *see, e.g., Lynch v. Leis*, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online).

Plaintiff was suspected of possibly suffering from cauda equina syndrome, which "is the compression of a collection of nerve roots called the cauda equina ... shaped like a horse's tail, is located at the bottom of your spinal cord," and is deemed a "medical emergency" that "can cause permanent damage, including paralysis, if left untreated." *Id.* A "rectal exam" to check a patient's "anal muscles" is often performed. *Id.*

The unauthenticated documents submitted by Plaintiff actually corroborate the defendant's presentation of the facts. One document indicates if a doctor suspects cauda equina syndrome, the doctor performs a "digital rectal examination" to check the patient's "anal sphincter tone" and also classifies cauda equina syndrome as a "surgical emergency." [Dkt. No. 44-2 at 1, 2, 3].

3

equina, located at the bottom of the spinal cord. Compressed cauda equina nerves can cause pain and weakness, and, if left untreated, permanent paralysis; thus, a diagnosis can be a medical emergency. [Dkt. No. 43-1].

7. The results of Dr. Boayke's sensory assessment were "Perianal area – Sensation preserved and anal sphincteric tone – intact." [*Id.*].

8. Plaintiff's history and physical evaluation excluded Cauda Equina Syndrome. [*Id.*].

9. Plaintiff admits that the defendant explained to him that he had performed the rectal exam to check for nerve damage, the "anal sphincter" and "anal verge" muscles. [Dkt. No. 18 at 6]. If the defendant had found nerve damage, he would have admitted Plaintiff to the infirmary. [*Id.* at 7].

## II. Standard of Review

It is well settled that a motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim. *See Celotex*, 477 U.S. at 323-25. In response to such a showing, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that

4

must be resolved at trial. *See id.* at 324. The party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing there is a genuine issue for trial'" with respect to that element. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

In reviewing the record on summary judgment, the Court "must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The non-moving party, however, must show more than some metaphysical doubt as to the material facts. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson*, 477 U.S. at 256). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. *See Anderson*, 477 U.S. at 249-50. There must be evidence on which the jury could reasonably find for the non-moving party. Id. at 252. A judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the opposing party is entitled to a verdict.

When a defendant moves for summary judgment on ground that plaintiff lacks evidence of an essential element of his claim, plaintiff is required, if he wants to ward off grant of the motion, to present evidence of evidentiary quality (either admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating existence of genuine issue of material

fact; evidence need not be in admissible form, but it must be admissible in content, in sense that change in form but not in content, would make evidence admissible at trial. *See Celotex*, 477 U.S. at 324. Hearsay "is neither admissible at trial nor supportive of an opposition to a motion for summary judgment." *Greensboro Professional Firefighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995). Such "second-hand" information learned from others fails to satisfy a plaintiff's burden "to survive a motion for summary judgment." *Monk v. Potter*, 723 F. Supp. 2d 860, 875, 878 (E.D. Va. 2010) (citing *Greensboro*, 64 F.3d at 967; *Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1121 (10th Cir. 2007) (noting statements conveyed to plaintiff were "second-hand" and inadmissible hearsay in opposition to summary judgment); *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (purported events related by plaintiff in her own deposition were based on second-hand information rather than personal knowledge and were therefore inadmissible hearsay for summary judgment purposes); Fed. R. Civ. P. 56(e) (supporting or opposing summary judgment affidavits must be based on "personal knowledge")).

## II. Analysis

### A. Eighth Amendment

The Fourth Circuit has observed that the "Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth*, 878 F.3d 89, 97 (4th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). "However, not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)).

> The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to "a substantial risk of serious

> harm," and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834, 837-38. In excessive force cases, on the other hand, courts must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

*Thompson*, 878 F.3d at 97-98. At first blush, the claim advanced by the Plaintiff—that the defendant's treatment was deliberately indifferent and the rectal exam constituted a sexual assault—appears to present both categories (deliberate indifference and excessive force) of Eighth Amendment claims.

    *B. Deliberate Indifference*

A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Here, the issue is not whether there was a serious medical need but whether the treatment, including the examination techniques employed, were unreasonable. The defendant examined Plaintiff with respect to his complaints of back pain. The examination included his concern over whether Plaintiff might have cauda equina syndrome, which is deemed a potential surgical emergency. *See, supra* at note 2. Plaintiff's objection is the way the sensory assessment portion of the examination was performed, specifically a digital rectal examination. Disagreement by an inmate with a doctor's medical judgment or treatment decisions, however, generally does not constitute deliberate indifference. "Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Tucker v. Duncan*, 499 F.2d 963, 965 n.1 (4th Cir. 1974)).

In *Jackson v. Lightsey*, 775 F.3d 170 (4th Cir. 2014), Lightsey, a doctor, was told by an inmate during a screening appointment that he had been previously diagnosed with a serious heart condition (congestive heart failure). Lightsey, who was not a cardiologist, proceeded to diagnose

7

the inmate with a less serious condition, arrhythmia, and the doctor altered the inmate's medication regimen. *Id.* at 174. The inmate's "health went into a tailspin," the inmate was denied repeated requests to see a cardiologist, his health deteriorated, and he suffered a heart attack and was hospitalized. The district court dismissed the claim against Lightsey as "a medical disagreement over proper diagnosis and care and thus failed to state a claim for deliberate indifference." *Id.*[3] On appeal, the Fourth Circuit noted that while the claim against Lightsey "might support a malpractice claim," it affirmed the dismissal by the district court.

> Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that [plaintiff's] claim against Lightsey is essentially a "[d]isagreement[] between an inmate and a physician over the inmate's proper medical care," and we consistently have found such disagreements to fall short of showing deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011). While a non-cardiologist's erroneous diagnosis of a serious heart condition, as alleged …, may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the "high bar" of a constitutional claim. *Iko [v. Shreve]*, 535 F.3d [225,] 241 [(4th Cir. 2008)].

*Jackson*, 775 F.3d at 178-79; *see Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation."); *Taylor v. Barnett*, 105 F. Supp. 2d 483, 488 (E.D. Va. 2000) ("as long as there is a legitimate medical reason for a certain course of treatment, an inmate's

---

[3] The Fourth Circuit has observed, in the context of an inmate's disagreement with a doctor's treatment regimen for the inmate's diabetes:

> Once prison officials are aware of a serious medical need, they only need to "respond[] reasonably to the risk." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). "Disagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. To find the prison officials liable, the treatment given must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

*Hixson v. Moran*, 1 F.4th 297, 302-03 (4th Cir. 2021).

8

disagreement with the treatment is not sufficient to state a claim") (citing *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999)).[4]

In *Allen v. Mullem*, No. C 91-3995 BAC, 1992 U.S. Dist. LEXIS 12645, *5 (N.D. Cal. Aug. 11, 1992), the plaintiff raised similar allegations of "inappropriate diagnostic procedures," specifically a rectal exam that the plaintiff characterized as a sexual assault. The district court were held the claim was no more than a disagreement by the inmate with the treatment provided by the doctor. The inmate sought medical attention for "rectal bleeding" and the doctor's examination of the inmate included a digital rectal exam. The district court observed that a "difference of opinion between prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim," and found the doctor's "examination was reasonable in light of the plaintiff's medical condition" and that "the doctor took reasonable steps to diagnose plaintiff's problem, given his symptoms." *Id.* at 5, 6 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("At most, Sanchez has raised a difference of medical opinion regarding his treatment. A difference of opinion does not amount to a deliberate indifference to Sanchez' serious medical needs.")).

In *Muhammed v. Smith*, No. 7:16cv34, 2016 U.S. Dist. LEXIS 152395 (W.D. Va. Nov. 3, 2016), an inmate with a history of chronic constipation and lactose intolerance sought treatment for "bloody stools." *Id.* at 2. The doctor conducted various tests to check for evidence of blood loss and performed rectal exams to check for blood in the annallingus cavity canal and to verify

---

[4] Even assuming the defendant had an alternative method of ascertaining sensory assessment, "[t]he law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of our court to 'second guess medical judgments' or to require that the [medical decisionmaker] adopt the more compassionate of two adequate options." *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014); *Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (citation omitted); *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) ("Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing" (citation omitted); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (plaintiff was under "constant medical supervision from the time of his arrival" in state prison and "[q]uestions of medical judgment are not subject to judicial review").

that neither the prostate nor hemorrhoids were the cause of the bleeding. The plaintiff alleged that he did not consent to the exams and disagreed with the doctor's "choices regarding appropriate diagnostic procedures and treatment," including that the rectal exams. *Id.* at *10. The court dismissed the plaintiff's Eighth Amendment claim concluding that his disagreement with the doctor's medical and diagnostic judgments did not rise to the level of deliberate indifference. *Id.* at 11 (citing *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 733 (4th Cir. 2015) ("Moreover, mere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief.")).

Here, as in *Muhammed* and *Allen*, Plaintiff cannot establish deliberate indifference based on his disagreement with the doctor's reasonable diagnostic procedures. Plaintiff admitted in his amended complaint that he was transported to the medical unit by wheelchair because he could not walk due to severity of his lower back pain. [Dkt. No. 18 at 4]. In evaluating Plaintiff's complaints, Dr. Boakye began his examination by raising and bending his legs and determining Plaintiff's pain level. The initial portion of the exam determined that Plaintiff's reflexes were "preserved." [Dkt. Nos. 1 at 6-7; 43-2]. With the assistance of a nurse, Dr. Boakye used a "pinprick" wheel during the sensory assessment to determine the need for an orthopedic or neurological consultation. [Dkt. Nos. 18 at 4-5; 43-1 at 1]. Plaintiff admits that Dr. Boayke's examination was to check Plaintiff's "nerves and the anal sphincter and the anal-verge muscles of the anus" to determine if there was "any nerve damage," and that id Dr. Boayke found nerve damage he would, "place [Plaintiff] in the infirmary." [Dkt. No. 18 at 5-6]. Dr. Boakye followed standard medical protocol for evaluating Plaintiff's complaint and determining the source of his pain. In Dr. Boakye's medical judgment, an important and necessary component of the evaluation of bi-lateral radiating lower back pain is a sensory assessment to consider and rule out cauda equina

10

syndrome—a possible surgical emergency. Plaintiff's disagreement with Dr. Boakye's medical judgment and his method of sensory assessment to evaluate Plaintiff's complaint, the source of his pain, and to rule out a possible medical emergency, does not amount to deliberate indifference.

Lastly, Plaintiff's reliance on a lack of informed consent due to an alleged violation of a VDOC regulation does not amount to anything more than possible negligence. First, violations of state law are not per se deliberate indifference. *See Weller v. Department of Social Services*, 901 F.2d 387, 392 (4th Cir. 1990) ("it is well settled that violations of state law cannot provide the basis for a due process claim"); *see also Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) (a § 1983 claim may not be based upon a violation of state procedure or policy that does not violate federal law); *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995) ("It is therefore a truism, reiterated many times by this court, that mere allegations of state law infraction are insufficient to support a Section 1983 claim."); *Rose v. Bartle*, 871 F.2d 331, 347 (3d Cir. 1989) ("It is axiomatic that violations of state law alone are insufficient to state a claim for section 1983 relief"). Moreover, a claim that asserts an issue of "informed consent" is a claim that "sound[s] in negligence, and [is] not sufficient to state an Eighth Amendment claim." *McLean v. Casino*, No. 5:13-CT-3065-FL, 2014 U.S. Dist. LEXIS 122607, *11 (E.D. N.C. Sept. 3, 2014), *aff'd*, 589 F. App'x 214 (4th Cir. 2015) (dismissing prisoner's Eighth Amendment claim that he was not informed of all the risks of prostate surgery); *Pabon v. Wright*, 459 F.3d 241, 250 (2nd Cir. 2006) ("[I]nadvertent failures to impart medical information cannot form the basis of a constitutional violation."); *Hutchinson v. Razdan*, No. 11-20159-Civ-COHN, 2013 U.S. Dist. LEXIS 29249, at *17 (S.D. Fla. Jan. 29, 2013) ("A claim regarding lack of informed consent without more is one of medical negligence, not deliberate indifference and ... negligent conduct ... does not rise to the level of a constitutional violation.").

*C. Excessive Force/Sexual Assault*

Although Plaintiff alleges that the rectal exam constitutes the unnecessary and wanton infliction of pain, he has not provided any evidence to support that conclusion. "For claims where intent is an element, an official's state of mind is a reference point by which she can reasonably assess conformity to the law because the case law is intent-specific." *Thompson*, 878 F.3d at 106. An Eighth Amendment claim of an improper contact of a sexual nature "must allege facts on which [plaintiff] could prove that the unwanted touching had some [objectively] sexual aspect to it; his own [subjective] perceptions alone that the contact was of a sexual nature are not sufficient." *Ellis v. Elder*, No. 7:08cv642, 2009 U.S. Dist. LEXIS 7814, at *7 (W.D. Va. Feb. 4, 2009) (citing *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998)). The evidence in the record establishes that Dr. Boakye employed the rectal exam as part of his sensory assessment to evaluate Plaintiff's complaint of lower back pain and to determine how to proceed and treat Plaintiff. The exam was done in the presence of a nurse, who was assisting the doctor. The exam was not accompanied by any "sexual comments or banner," *Berryhill*, 137 F.3d at 1076-77, and there was a clear penological interest in providing treatment to a prisoner—providing him with the medical treatment the Constitution requires be provided. *Cf. Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (an Eighth Amendment violation "is self-evident" if there is "no penological justification for" the contact). Here, there is no evidence of malicious intent, sadistic purpose, punishment, or any like intent. To the contrary, the evidence establishes that the defendant was trying to determine the nature of Plaintiff's medical need, if it was an emergency, and if he needed a consultation with an orthopedist or neurologist. The record establishes there was no deliberate indifference, the defendant's examination of Plaintiff was reasonable, there was no malicious or sadistic intent, and the defendant's motion for summary judgment will be granted.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment [Dkt. No. 36] must be granted. An appropriate order will issue alongside this memorandum opinion.

April 28, 2023
Alexandria, Virginia

_____
Anthony J. Trenga
Senior U.S. District Judge